HOUSING AUTHORITY OF THE CITY OF MILWAUKEE,
Respondent, v. MOSBY, Appellant.*

*No. 162. Argued November 1, 1971.—Decided January 4, 1972.*
(Also reported in 192 N. W. 2d 913.)

* Motion for rehearing denied, with costs, on February 29, 1972.

For the appellant there were briefs by *James A. Walrath,* attorney, and *Patricia McMahon* of counsel, both of Milwaukee, and oral argument by *Mr. Walrath.*

For the respondent there was a brief by *John J. Fleming,* city attorney, and *Michael J. McCabe,* assistant city attorney, and oral argument by *Mr. McCabe.*

BEILFUSS, J. The appellant, Harriett Mosby, has raised several issues in her brief filed in support of her appeal, namely: (1) The court applied the wrong standard, (2) the evidence is insufficient to support the findings, and (3) the tenant was denied due process because she was not given a pre-eviction administrative hearing. The appellant also asserts an additional issue has arisen after the appeal was taken because of a HUD administrative order dated February 22, 1971, which regulation provides for an administrative hearing. She claims the regulation must be applied retroactively.

Because we believe the questions of due process and the retroactivity of the February 22, 1971, regulation are controlling, we will only discuss briefly the first two issues.

The respondent housing authority, through the city attorney, concedes that a public housing tenant is entitled to a due process hearing as to the reasons for eviction in unlawful detainer proceedings consistent with governmental regulations concerning public housing. Our unlawful detainer statute, sec. 291.07, Stats. 1967, provides in part:

"**Proceedings and pleadings.** After the return of the summons served as above provided, and at the time and place named therein, if the defendant appear he may answer the complaint; and all matters in excuse, justification or avoidance of the allegations of the complaint must be answered specifically; . . ."

This section, together with the rationale expressed in *Dickhut v. Norton* (1970), 45 Wis. 2d 389, 173 N. W. 2d 297, of allowing defenses based upon public policy, is broad enough to accommodate a defense based upon a federal public housing regulation.

The appellant Mosby contends the court did not apply the right standard to the conduct of Harriett Mosby in the de novo trial. The trial court's memorandum decision of May 22, 1970, did state the issues to be determined at the trial were (1) whether Harriett Mosby failed to maintain her apartment in a reasonable and clean condition, and (2) whether the housing authority acted in an arbitrary and capricious manner in terminating the tenancy.

Appellant contends that by virtue of a HUD circular dated December 17, 1968, the standard should have been ". . . whether the conduct of such tenants does or would be likely to interfere with other tenants in such a manner as to materially diminish their enjoyment of the premises."

We think the record clearly reveals that the trial judge did apply the standard the appellant Mosby contends was required. In the findings of fact given after the trial, the trial judge stated: ". . . Now, the Court on those violations would have to find that these violations would constitute a failure to keep the standard of care set by the Housing Authority and that those violations were detrimental to other tenants . . . ."

The appellant Mosby also contends the evidence was insufficient to show conduct on her part in the cleanliness and maintenance of the apartment was detrimental to other tenants. The credibility of the witnesses and the weight of the testimony are for the trier of the facts and if there is any credible evidence to sustain the findings of fact we will not disturb them upon appeal.

We have reviewed the record. We do not intend to discuss the evidence nor the findings, except to state our conclusions that there is ample credible evidence to sustain the findings that the premises were not kept as clean as they reasonably should have been, nor were they maintained in such a condition as reasonably required by the rental agreement; that the authority did not act in an arbitrary or capricious manner; and that the conduct of the appellant Mosby in the care and maintenance of the apartment was detrimental to other tenants.

The appellant Mosby further contends she was denied due process of law because she was not afforded a pre-eviction administrative due-process-type hearing with notice, statement of charges and right to counsel. The trial judge, in an able and helpful memorandum decision, concluded that a public housing tenant was entitled to an adversary type of hearing with notice, reasons for eviction, and right to counsel, and that such a hearing could be afforded the appellant in the trial de novo which was granted to her.

Judge FOLEY concluded that under the HUD circular of February 7, 1967, the appellant was entitled to notice of the reasons for eviction and an opportunity to reply in private conference, and that this requirement was mandatory by virtue of a decision of the United States Supreme Court in *Thorpe v. Housing Authority* (1969), 393 U. S. 268, 89 Sup. Ct. 518, 21 L. Ed. 2d 474. Judge FOLEY further concluded that the informal conference provided for in the HUD circular of February 7, 1967, did not meet the requirements of due process (*see Goldberg v. Kelly* (1970), 397 U. S. 254, 90 Sup. Ct. 1011, 25 L. Ed. 2d 287), and for that reason conducted a trial de novo wherein the due process requirements of notice of reasons for eviction and adversary hearing were extended to the appellant. The housing authority, in addition to proving notice of termination, was required to show its reasons for eviction and the violations of the rental agreement;

that she was given notice of reasons and an opportunity to discuss the matter with the housing manager and that his action was not arbitrary or capricious; and that the conduct of the appellant did have a detrimental effect upon other tenants in the housing project. The appellant, Harriett Mosby, was afforded due process.

If we were not required to consider the retroactive effect of another HUD circular issued February 25, 1971, we would affirm the judgment appealed from without hesitation. (The judgment was entered June 26, 1970, and the appeal record was filed in this court September 3, 1970, both several months before the February, 1971, circular. The case was argued in this court on November 1, 1971, and the decision is announced on this day, January 4, 1972.)

A question as to the effect of a HUD circular was raised at oral argument. We conclude it is a valid enforceable rule that has the force of law. In *Thorpe, supra,* the United States Supreme Court, in reaffirming the HUD circular of February 7, 1967, referred to above, states at pages 274, 275:

"Pursuant to its general rule-making power under sec. 8 of the United States Housing Act of 1937, HUD has issued a Low-Rent Management Manual, which contains requirements that supplement the provisions of the annual contributions contract applicable to project management. According to HUD, these requirements 'are the minimum considered consistent with fulfilling Federal responsibilities' under the Act. Changes in the manual are initially promulgated as circulars. These circulars, which have not yet been physically incorporated into the manual, are temporary additions or modifications of the manual's requirements and 'have the same effect.' . . ."

The HUD circular of February 22, 1971, contains the following provision:

"3. REQUIREMENTS. Each local housing authority shall adopt procedures or revise existing grievance procedures

to embody, as a minimum, the following standards and criteria:

"a. A tenant shall be afforded an opportunity for a hearing before an impartial official or a hearing panel if he disputes within a reasonable time any LHA action or failure to act in accordance with the lease requirements, or any LHA action or failure to act involving interpretation or application of the LHA's regulations, policies or procedures which adversely affect the tenant's rights, duties, welfare or status.

". . .

"e. The tenant shall be afforded an opportunity to present his side of the dispute, including the opportunity to be represented by counsel or another person of his choice, to bring in witnesses and to confront and cross-examine witnesses in appropriate circumstances."

We conclude that this provision does not change the terms of the lease used by the parties to this action, nor does it prevent the housing authority from evicting a tenant who does not comply with the terms of the lease. It only provides for an administrative method of advising tenants of violations and making factual determinations of whether such violations exist and whether they are of such nature as to require eviction. It also provides a means whereby a neutral person or body of persons can attempt to discuss the problems with the objective of saving the tenancy. Eviction is hardly consistent with public interest in providing housing for low income persons. This procedure promotes the underlying objectives of providing low-rent public housing in the first instance. We conclude the hearing requirement of the HUD circular of February 22, 1971, is valid and mandatory upon the housing authority. *See Thorpe, supra.*

The crucial issue is whether the HUD circular of February 22, 1971, must be applied retroactively in this case.

In *Thorpe, supra,* a tenant had been evicted from her public housing apartment by the housing authority. The authority refused to state any reason for the eviction.

The tenant was given a trial de novo in the superior court which affirmed the eviction. The Supreme Court of North Carolina also affirmed. The United States Supreme Court, at page 272, granted certiorari to consider "whether petitioner was denied due process by the Housing Authority's refusal to state the reasons for her eviction and to afford her a hearing at which she could contest the sufficiency of those reasons."

While the petitioner's case in *Thorpe, supra,* was pending, HUD passed a circular which stated that housing authorities must inform the tenant in a private conference or other appropriate manner of the reasons for eviction. *Id.* at page 272. The court remanded the case to the North Carolina Supreme Court for reconsideration of the case in light of the HUD circular. That court reaffirmed its prior holding, stating that the circular's directive would be applied only prospectively. The United States Supreme Court again granted certiorari and held that the HUD circular must be applied retroactively in any case where the tenant still resided in the project on the date of decision.

The court stated, at page 282:

" '[I]f subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional, . . . I know of no court which can contest its obligation. It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns . . . the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.' "

In *Glover v. Housing Authority of City of Bessemer, Ala.* (5th Cir. 1971), 444 Fed. 2d 158, the precise issue

present in the instant case was ruled upon by the fifth circuit. The court held that even though the tenant plaintiff had received the benefit of an evidentiary hearing in the district court, an administrative hearing must be granted to the plaintiff. In support of this holding, the court stated at pages 161, 162:

"The Authority argues further that there is no need for a Housing Authority hearing in this case because the district court conducted an evidentiary hearing. But we think this argument misses the point that it is a hearing within the administrative framework to which Mrs. Glover is entitled. As this Court said about due process rights to a hearing in a case contesting the discharge of school teachers who asserted this was retaliation for an exercise of first amendment rights,
"The District Court hearing does not, in this case, supplant the necessity for employment by the board of appropriate procedures. . . . The localized, less formalized, less adversary atmosphere of the board is the best forum to adjudicate and ameliorate problems of teacher rehiring to the mutual acceptability, if not the full satisfaction, of board and teacher. Abdication to the courts may be the short way across, but it may be the long way around, as in this case. . . . The hearing which we require is one *nunc pro tunc*. . . .
"Lucas v. Chapman, 5 Cir. 1970, 430 F. 2d 945, 948."

A question has been raised concerning the possibility of double judicial review of the administrative determination. We deem that only one administrative-type hearing is required (either before a hearing officer or hearing panel as provided by the circular), and that ample and adequate rights of judicial review of the administrative action are available to an aggrieved tenant through the unlawful detainer procedures as provided by statute and no double judicial review is required.

We therefore hold that the HUD circular of February 22, 1971, insofar as it provides for a pre-eviction administrative hearing, is retroactive as to this case and as to

any other similar public housing tenants who have been ordered evicted but are still in possession on the date of this decision. The HUD circular of February 22, 1971, shall not be applied retroactively to former tenants not in possession of the premises on this date. To do so would probably disrupt present low income tenants in public housing and, as such, would be inconsistent with the basic purposes of public housing for low income persons.

The judgment providing for eviction and writ of restitution is reversed and remanded with directions to dismiss the complaint but with leave to the housing authority to reinstitute eviction procedures consistent with the opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.

ROBERT W. HANSEN, J. (*dissenting*). The majority holds that a printed circular of a federal government agency must be given retroactive application. If Congress were to alter the requirements for admission to federal housing projects, would such Act of Congress have retroactive applicability, giving a cause for damages to one properly excluded under the law in existence at the time of the denial of right to become a tenant? If the Wisconsin legislature were to change the manner in which unlawful detainer cases are processed in court, would such new state law be applied retroactively to invalidate proceedings in exact accord with the then existing law? If the city of Milwaukee were to pass an ordinance changing the procedure for proceeding against building code violators, would this affect cases commenced or concluded under the prior ordinance? The general rule has been that, in the absence of specific provision therefor, the law does not favor retroactive application of new legislation.[1] The majority finds a new rule in a recent de-

---

[1] *See:* 50 Am. Jur., *Statutes*, p. 495, sec. 478.

cision of the United States Supreme Court,[2] and sees it as requiring here the setting aside of the full judicial hearing because, subsequent to such judicial hearing, the housing and urban development agency (HUD) issued a circular providing for administrative hearings in housing project evictions.

The majority opinion sets forth that certiorari was granted in *Thorpe* to consider " 'whether petitioner was denied due process by the Housing Authority's refusal to state the reasons for her eviction and to afford her a hearing at which she could contest the sufficiency of those reasons.' " It is against this background of reason for taking jurisdiction that the *Thorpe Case* must be considered and the decision held to the fact situation before the court. There the issue was not one type of hearing contrasted with another. It was rather a question of hearing or no hearing at all. It is true that in *Thorpe* a HUD circular requiring housing authorities to inform tenants "in a private conference or other appropriate manner" of the reasons for eviction, although issued while the *Thorpe Case* was pending, was given retroactive application. But, in the light of a subsequent decision of the high court,[3] it is difficult to believe that the result would have been different if no such circular requiring the stating of reasons for eviction had been issued. Statutory construction of the public housing statutes, public policy and constitutional assurances, support the insistence that tenants in public housing projects know why what is to happen to them is to happen and that they have the right to contest reasons given and eviction. The HUD circular did no more than provide for what the housing law already intended and due process already required—that reasons be given for eviction of public housing tenants.

---

[2] *Thorpe v. Housing Authority* (1969), 393 U. S. 268, 89 Sup. Ct. 518, 21 L. Ed. 2d 474.

[3] *Goldberg v. Kelly* (1970), 397 U. S. 254, 90 Sup. Ct. 1011, 25 L. Ed. 2d 287, requiring due process safeguards as to the analogous situation of terminating welfare benefits.

It is a long step beyond *Thorpe*, as we see it, to hold that a full judicial hearing, with all reasons for eviction disclosed and established, and the opportunity to contest the sufficiency of those reasons provided, is invalidated by a subsequently distributed circular providing for administrative hearings. As to due process, the judicial hearing surely assures tenants both the disclosure of reasons for eviction, and the opportunity to contest, as surely as would an administrative hearing by the agency. It is true that one federal appeals court has, quoting from an earlier case of its own involving teacher rehiring, indicated its preference for administrative-type hearings as the "best forum to adjudicate and ameliorate problems of teacher rehiring," and rejected a full judicial hearing as an adequate substitute.[4] The majority accepts that result and perhaps the leaning toward administrative rather than judicial hearings. We find far more persuasive and convincing the reasoning and rationale of the decision of another federal appeals court in a case involving the eviction of a tenant from a city housing authority project.[5] There the appeals court found that the public housing tenant, whom the city housing authority sought to remove from her quarters, was not entitled to declaratory and injunctive relief on her theory that the housing authority was required to hold an administrative evidentiary hearing where, under the state law, the housing authority, if it sought to obtain an eviction order, must prove allegations in court at full trial in which the tenant may demand a jury.

Since it was not necessary to require an administrative hearing to insure due process or full hearing, that being insured by the provision for judicial hearing, the fourth circuit court of appeals concluded that the case then fit into the statement in *Thorpe* that:

---

[4] *Glover v. Housing Authority of City of Bessemer, Ala.* (5th Cir. 1971), 44 Fed. 2d 158, citing *Lucas v. Chapman* (5th Cir. 1970), 430 Fed. 2d 945, 948.

[5] *Johnson v. Tamsberg* (4th Cir. 1970), 430 Fed. 2d 1125, 1127.

". . . Moreover, even if the Authority does not provide such a hearing, we have no reason to believe that once petitioner is told the reasons for eviction she cannot effectively challenge their legal sufficiency in whatever eviction proceedings may be brought in the North Carolina courts. . . ." [6]

In the case before us the appellant was afforded a full judicial hearing in which she, through counsel, fully participated. Adequate notice, reasons for eviction and full opportunity to contest were part of such judicial hearing. Of this appellant, as of petitioner in the *Johnson v. Tamsberg Case*, it can fairly be said: "Any substantial due process grievance that plaintiff might have had when she filed her complaint was mooted by the plenary hearing that she was afforded." [7] Of the case before us, as was pointed out in the fourth circuit case, it can be said that: "There is no contention that the court hearing was inadequate in scope or that the notice provided was insufficient to enable plaintiff's counsel to prepare for it. . . . We have been offered no suggestion that the plaintiff was in any way disadvantaged [by the South Carolina policy of providing a hearing in court rather than before an administrative tribunal] or that the result in this case would have been different had the Housing Authority itself held the hearing. Hence, the question is, at least on this record, purely academic." [8] We agree. Where the appellant was given a full judicial hearing, with adequate notice and full opportunity to contest the reasons given for eviction, her participation in such judicial hearing makes unreasonable and untenable her claim that retroactive application of a federal agency circular would or could give her anything more than she has been afforded. No substantial right being involved, we hold that the ques-

[6] *Thorpe v. Housing Authority, supra,* at page 284.
[7] *Johnson v. Tamsberg, supra,* at page 1127.
[8] *Id.* at page 1127.

tion of retroactivity is, at least on this record, "academic." We would affirm.

I am authorized to state that Mr. Justice LEO B. HANLEY joins in this dissent.